# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WHOOP, INC.,<br><br>      Plaintiff,<br><br>          v.<br><br>SHENZHEN LEXQI ELECTRONIC TECHNOLOGY CO., LTD.,<br><br>      Defendant. | Case No. _____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff WHOOP, Inc. ("Plaintiff" or "WHOOP"), by and through its counsel, brings this Complaint against Shenzhen Lexqi Electronic Technology Co. Ltd. ("Defendant" or "Shenzhen Lexqi") and alleges and states as follows:

## INTRODUCTION

1.      Since its founding over a decade ago, WHOOP has been on the cutting edge of collecting biometric information through a wearable device that is then used by WHOOP to provide its users with insights into their physiology that can help unlock their full potential.

2.      From its first commercial release, the wearable has featured a revolutionary appearance that flew in the face of conventional fitness trackers and gave it a distinct and highly recognizable aesthetic. Over the past decade, that unique aesthetic has developed into iconic trade dress, making the WHOOP wearable instantly recognizable to consumers:



3.     Seeking to trade off the goodwill that WHOOP has developed over the past decade, as well as the unique association between the well-known WHOOP trade dress and the popular WHOOP wearable, Defendant recently developed and released a health monitoring device that makes unauthorized use of the WHOOP trade dress, despite knowledge that WHOOP owns and exclusively uses the trade dress. Defendant continued to sell the infringing products in the United States, even after being put on express notice of its violation of WHOOP intellectual property. Images of a WHOOP device featuring the trade dress next to Defendant's infringing product leave no doubt that this infringement is a willful attempt to misappropriate WHOOP intellectual property to offer an inferior and misleading product:

| WHOOP Product Featuring the WHOOP Trade Dress | Representative Example of Shenzhen Lexqi's Infringing Product |
|---|---|
|  | |

*see also* Ex. A (Infringement Charts).

4.     Plaintiff seeks damages and injunctive relief for trade dress infringement, false designation of origin, and unfair competition by Shenzhen Lexqi in violation of the laws of the United States and the Commonwealth of Massachusetts.

## PARTIES

5.     Plaintiff WHOOP, Inc. is a corporation duly organized and existing under the laws of the State of Delaware with its principal place of business at One Kenmore Square, Suite 601, Boston, Massachusetts 02215.

6.     Upon information and belief, Defendant Shenzhen Lexqi Electronic Technology Co. Ltd. is a company organized and existing under the laws of China with a principal place of business at 12F, Building D, Huilonda Industrial Park, Shilong Community, Shiyan Street, Baoan District, Shenzhen, China.

## JURISDICTION AND VENUE

7.     This action arises under federal law, state law, and common law. The federal law claims are federal trade dress infringement, false designation of origin, and unfair competition in violation of Section 43(a) of the Lanham Act (15 U.S.C. § 1125(a)). The state and common law claims are unfair competition in violation of Massachusetts statutory law (Mass. Gen. L. ch. 93A §§ 2, 11) and common law.

8.     This Court has original subject matter jurisdiction over the federal law claims under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1138(a)-(b) (trade dress, false designation of origin, and unfair competition), and 15 U.S.C. § 1121 (Lanham Act).

9.     This Court has supplemental jurisdiction over the state law and common law claims under 28 U.S.C. § 1367(a).

10.     This Court has personal jurisdiction over Defendant Shenzhen Lexqi pursuant to Federal Rule of Civil Procedure 4(k)(2) because Plaintiff's claims arise under federal law, Shenzhen Lexqi is not subject to jurisdiction in any state's courts of general jurisdiction, and this exercise of jurisdiction comports with due process.

11.     Shenzhen Lexqi has continuous and systematic contacts and minimum contacts with the entire United States that give rise to Shenzhen Lexqi's infringement, including expressly targeting the United States as a market for its infringing products.

12.     Upon information and belief, Shenzhen Lexqi sells products in the United States via e-commerce websites, including Amazon storefronts. *See* Ex. B (list of storefronts and URLs).

13.     Upon information and belief, Shenzhen Lexqi has targeted sales to United States residents, including Massachusetts residents.

14.     Shenzhen Lexqi intends to and does market and sell its infringing products in the United States, as reflected in its public filings with the Federal Communications Commission ("FCC") seeking equipment authorization. As reflected in the public FCC records, Shenzhen Lexqi filed for and obtained equipment authorization for FCC ID 2BB8O-H59-1, i.e., its infringing activity tracker. *See* Ex. C.

15.     Defendant also purports to have "authorized" the sale of the Infringing Wearables in the United States.  For example, in response to cease and desist letters sent by WHOOP, multiple online storefronts selling Defendant's Infringing Wearables attached identical "Authorization letter[s]," purportedly signed by Defendant and authorizing sale of the Infringing Wearables "Worldwide," including in the United States.  Ex. D. Another online storefront responded that it operates under a licensing agreement with Defendant that "explicitly grants [it] the right to

manufacture, market, distribute, and sell [the Infringing Wearables] in the United States market, including via the Amazon.com platform." *Id.*

16.     As part of its application with the FCC for the equipment authorization for the infringing activity tracker (FCC ID 2BB8O-H59-1), Shenzhen Lexqi filed a US Agent for Service of Process Letter of Attestation, designating UA International Inc. as its United States agent for service of process for FCC ID 2BB8O-H59-1. Ex. C.

17.     In addition to its application for equipment authorization for the infringing device, Shenzhen Lexqi has sought equipment authorization from the FCC for nine additional devices, demonstrating its continued and consistent efforts to market and sell products in the United States.

18.     Shenzhen Lexqi has also sought to avail itself of United States intellectual property protections.  It is the owner of U.S. Patent Application No. 29/957,863, which purports to seek protection for design elements of its product, including many that infringe the WHOOP trade dress.

19.     Shenzhen Lexqi has purposefully availed itself of the privileges of conducting activities in the United States and invoked the benefits and protections of the United States' laws, including by seeking patent protection from the USPTO, seeking equipment authorizations from the FCC, selling products into the United States, including to consumers in Massachusetts, engaging United States counsel to represent it in intellectual property matters, and designating a United States Agent for Service of Process for FCC ID 2BB8O-H59-1 (the infringing product). Accordingly, jurisdiction in this forum is proper.

20.     Venue is proper in this District under 28 U.S.C. § 1391.

## THE WHOOP TRADE DRESS

21.     Since its founding in 2012, WHOOP has expended considerable time and effort developing premium hardware, software, and analytics to unlock human performance and monitor health.

22.     As a result of the tireless efforts of WHOOP product developers and engineers, the WHOOP physiological monitoring device (the "WHOOP Wearable") has established a reputation as an industry leader in health monitoring devices.

23.     The initial product released by WHOOP was a wearable optimization system designed for elite athletes and teams, to help them perform at their highest levels by gaining greater visibility into their bodies' needs, but WHOOP has expanded its target consumers to include all general consumers, including general consumers interested in health and wellness.

24.     The WHOOP Wearable allows consumers to track daily behaviors and metrics like sleep, strain, recovery, and more, to help users optimize their physical and mental performance.

25.     Since at least as early as 2015, when WHOOP released the first commercial version of the WHOOP Wearable, the WHOOP Wearable has born distinctive features designed to differentiate it from competitor products.

26.     Specifically, the overall appearance of the WHOOP Wearable, in all of its iterations over the past decade, includes at least the following features, the combination of which create a non-functional and distinctive trade dress: a continuous fabric band that wraps over the device (i.e., a faceless device) with thin metal accents on the sides of the device, an example of which is shown below (the "WHOOP Trade Dress").



27.    Since 2015, WHOOP has continuously used the WHOOP Trade Dress with the intention of creating a recognizable, iconic, unique form factor that consumers can readily identify as a product that is solely available from WHOOP.

28.    This unique faceless design with the continuous fabric band and thin metal accents was revolutionary to the health tracking wearables industry, which was previously dominated by wearable devices with increasingly elaborate displays.  It was also recognized for its innovation and distinctive aesthetics.  For example, WHOOP won the Red Dot Award: Product Design 2016, one of the largest and most prestigious international product design awards in the world, for the innovative design of the WHOOP Wearable.

29.    The WHOOP Trade Dress is not functional. The design features embodied by the WHOOP Trade Dress are not essential to the function of the wearable device, do not make the device cheaper or easier to manufacture, and do not affect the quality of the device. The design embodied by the WHOOP Trade Dress is not a competitive necessity, as there are numerous other designs available that are equally feasible and efficient, none of which necessitate copying or imitating the WHOOP Trade Dress. Indeed, several other providers of wearable health monitoring devices offer products that do not feature the WHOOP Trade Dress, representative examples of which are shown below (offered by Apple, Fitbit, Pavlok, and Garmin, respectively).



30.     The features of the WHOOP Trade Dress serve to render the WHOOP Wearable, the embodiment of the WHOOP Trade Dress, as a distinct product originating solely from WHOOP.

31.     The WHOOP Wearable has been commercially successful, has received a large volume of unsolicited media attention, and has been featured in many popular publications nationwide and internationally.

32.     As a result of long and substantial use, sales, advertising, and third-party recognition, the WHOOP Trade Dress is widely and instantly recognizable for its unique design and is associated with one source, namely, WHOOP.

33.     WHOOP owns a pending federal application for one embodiment of the WHOOP Trade Dress (App. Serial No. 99/080,005) for use in connection with "Health monitoring devices for capturing and transmitting physiological metrics to be available on an online analytic system; Wearable heart rate monitors" in International Class 10 (the "Application"). As described in the Application, the trade dress for which WHOOP has filed its application includes:

>  [A] three-dimensional configuration of a wearable device comprised of a U-shaped clasp on which the word WHOOP appears on a crossbar, with sides that hinge distally from the crossbar into a rectangular sensor device (not visible) and allow the clasp to open and close into place over the sensor device. The strap is the band which connects to the sensor device on one end and the crossbar on the other and, when closed, wraps around the entire design and lays flat over the sensor device and snug on the wrist of the wearer. The word WHOOP and the edging detail on

the side of the wearable device, both featured in broken lines, are not claimed as part of the mark[.]



34.     WHOOP has invested substantial time, money, and effort to advertise and promote the WHOOP Wearable and the WHOOP Trade Dress in the United States and around the world through virtually every available type of media, including print publications, television, and the Internet (e.g., via its own website, banner ads, and social media, including Facebook, Twitter, Instagram, TikTok, Pinterest, and LinkedIn). WHOOP prominently displays the WHOOP Trade Dress on its website and in all of its marketing materials. By virtue of its efforts, WHOOP has developed substantial recognition and goodwill in its unique and distinctive WHOOP Trade Dress.

35.     The public's association of the WHOOP Trade Dress with WHOOP has been enhanced by advertisement of the WHOOP Wearable that prominently features the WHOOP Trade Dress and encourages consumers to identify the WHOOP Wearable by the WHOOP Trade Dress (e.g., "Is your crush wearing a WHOOP?"). Exemplary advertisements are reproduced below.

  

Ex. E.

36.    WHOOP also promotes the WHOOP Wearable in connection with the WHOOP Trade Dress throughout the United States through partnerships with well-known individuals, professional sports associations, college sports teams, and industry partners. For example, WHOOP has partnered with celebrities, such as global music icon Niall Horan, organizations, such as the Professional Golf Association (PGA) and the National Football League (NFL), Warner Bros. Discovery, and Notre Dame Athletics, and professional athletes, such as Patrick Mahomes (football), Cristiano Ronaldo (soccer), Michael Phelps (swimming), and Aryna Sabalenka (tennis), among many others.

37.    As a result of the widespread use and display of the WHOOP Trade Dress by WHOOP in association with its wearable device, (a) the public has come to recognize and identify the products bearing the WHOOP Trade Dress as emanating from WHOOP, (b) the public recognizes that products bearing the WHOOP Trade Dress constitute high-quality products that conform to the specifications created by WHOOP, and (c) the WHOOP Trade Dress has established strong secondary meaning and extensive goodwill.

38.    In addition to substantial advertising and promotional activities conducted by WHOOP, the WHOOP Wearable has received and continues to receive widespread unsolicited

media coverage and attention, including in industry publications and general third-party articles, press releases, and videos with worldwide distribution. For example, the WHOOP Wearable, along with pictures showing the WHOOP Trade Dress, has appeared in *Forbes*, *Sports Illustrated*, *The New York Times*, *Good Housekeeping*, *Conde Nast Traveler*, *Cosmopolitan*, and *People*, among countless other publications in print and online.

39.     Indeed, it is routine for articles to identify users of the WHOOP Wearable solely through images from afar based on the distinctive WHOOP Trade Dress. For example, in an article published by *People* on July 10, 2024, the author reports that Prince William wore a WHOOP Wearable at the UEFA EURO quarterfinals, along with a picture of the device, as shown in the excerpt below. Ex. F.



40.     In a separate article reporting on Prince William wearing a WHOOP Wearable, the author identifies the WHOOP Wearable at a distance based on the distinctive design, shown in the images below: "To the untrained eye this might have just looked like a black canvas band wrapped

around his wrist. But fit and athletically gifted people, such as me, instantly recognize it as the It fitness accessory worn by Michael Phelps, Tiger Woods, Rory McIlroy and the like." Ex. F. The author further comments on the instant recognizability of the design: "When you start using Whoop, you get high on the silent respect that comes from fellow wearers when they get a flash of your wrist." *Id.*



Prince William was seen wearing a Whoop device while watching England v Switzerland at the Euros
REX SHUTTERSTOCK

41.    Third-party articles regularly tout the distinctive nature of the WHOOP Wearable and its role in popular culture. *See, e.g.*, Ex. F (*Wired*) ("In a sea of nearly identical fitness trackers, Whoop stands apart."), (*Medium*) ("the Whoop strap has become the latest status symbol in our wellness-obsessed culture."), (*CNET*) ("You've probably seen this discreet, screenless band on the wrists of sports superstars like Partick Mahomes, Cristiano Ronaldo and Mathieu van der Poel"), (*Independent*) ("One of the hottest products right now is the Whoop strap. From basketball superstar LeBron James, to the EF Pro Cycling team, the list of VIP users keeps growing – and it's become more talked about than ever").

42.     Trade dress serves to identify and distinguish the source of products in the marketplace through distinctive design elements and visual appearance – i.e., it allows consumers to identify a product and its source based solely on the design and appearance of the product, rather than any associated trademark use. WHOOP has achieved this type of source identification and trade dress recognition with its WHOOP Trade Dress, which allows consumers to identify a WHOOP Wearable based on design and appearance alone.

43.     In fact, the WHOOP Trade Dress has become so iconic and beloved that consumers have created their own forums for documenting people wearing the popular WHOOP Wearable based on images and videos. For example, there is an Instagram page called "Whoop In The Wild," which is "[n]ot affiliated with WHOOP," that is "always on the hunt" for images of public figures wearing the WHOOP Wearable based solely on its use of the WHOOP Trade Dress. In the majority of the photos and videos posted to this Instagram page, the WHOOP trademark is not visible, so consumers are identifying the wristbands as WHOOP Wearables by the WHOOP Trade Dress alone, as shown in the representative examples below. *See* Ex. G.











44.    Similarly, users of the social media platform Reddit have created a sub-thread for "WHOOP sighting[s]" where users post images of athletes and celebrities seen wearing products embodying the WHOOP Trade Dress.  *See* Ex. H.  In the majority of the photos and videos posted to this sub-thread, the WHOOP trademark is not visible, so consumers are identifying the wristbands as WHOOP Wearables by the WHOOP Trade Dress alone, as shown in the representative examples below. *Id.*







45.     As demonstrated by the examples above, the WHOOP Trade Dress serves as a quintessential example of effective trade dress, as its form effectively communicates to consumers the source of the product, allowing consumers to recognize the WHOOP Wearable from a distance based on the distinctive, unique design alone.

46.     The WHOOP Trade Dress is instantly recognized, highly sought after by the general public, and a valuable company asset.

**Shenzhen Lexqi's Unlawful Infringement**

47.     Upon information and belief, Shenzhen Lexqi is a manufacturer and wholesaler of smart watches and health monitoring wearable devices that has built a segment of its business on copying the WHOOP Trade Dress.

48.     In July 2025, Plaintiff became aware of several online marketplace listings that appeared to have been recently listed on Amazon.com selling knockoff WHOOP Wearables using the WHOOP Trade Dress. Exemplary embodiments are depicted below:





*See* Ex. A.

49.     Many of these storefronts on Amazon.com appeared to offer the identical infringing product ("Infringing Wearables"), and many of these storefronts appeared to be alias storefronts or shell companies for the same providers. Many of them used brand names reflecting unusual combinations of letters that do not have a clear pronunciation or meaning (e.g., EGQINR, GJYMSI, SGJIK).

50.     Upon information and belief, Defendant Shenzhen Lexqi is selling the Infringing Wearables to United States consumers through some or all of these shell companies and storefronts.

51.     As seen below, the Infringing Wearables are a wholesale copy of the WHOOP Trade Dress, including use of a continuous band wrapped across the device to create a faceless front and featuring thin metal or metallic accents around the device, including the use of metal accents across the front of the device used to mimic the U-shaped trim on the WHOOP Wearable.



| WHOOP Trade Dress | WHOOP Wearable Embodying the WHOOP Trade Dress | Infringing Wearable representative example |
|---|---|---|

*See also* Ex. A (Infringement Charts).

52.     The obvious and confusing similarity between the WHOOP Wearable embodying the WHOOP Trade Dress and the Infringing Wearables is amplified when each product is seen as worn on the user's wrist:



| WHOOP Wearable | Infringing Wearable |
|---|---|

20

| WHOOP Wearable | Infringing Wearable |
|:---:|:---:|
|  |  |

*See, e.g.*, Exs. E and I.

### Shenzhen Lexqi Encourages Continued Unlawful Infringement in Response to Cease and Desist Letter to Storefronts

53.     In July 2025, Plaintiff sent letters to over a dozen of these online storefronts, demanding, *inter alia*, that they immediately cease all sales of the Infringing Wearables and any other products bearing trade dress or product design that is identical or confusingly similar to the WHOOP Trade Dress.

54.     Several of the recipients of the letters were difficult to even locate and did not respond to letters sent to the best available address. However, five of the six the "entities" that did respond (the "Responding Fronts") confirmed that the Infringing Wearables are manufactured by Defendant.[1] *See, e.g.*, Ex D ("Our [EGQINR] products are purchased from ***Shenzhen Lexqi Electronic Technology Co., Ltd***."); *id.* ("Our [Harry Williams] smart wristbands … were legally procured from ***Shenzhen Lexgi Electronic Technology Co., Ltd.***")[2]; *id.* ("Our smart wristbands

---

[1] The sixth store that responded, Hadrono, did not identify its manufacturer.  Instead, it admitted that its listing of the Infringing Wearable was an "oversight" that should not have occurred without approval from ***WHOOP***.  Ex. D. Hadrono had confused Defendant's Infringing Wearable for authentic WHOOP Wearables embodying the WHOOP Trade dress.  *Id.*

[2] In later correspondence from the same representative of the same Amazon storefront, he writes, "**We** filed **our** design patent application..." (emphasis added), rather than "Shenzhen Lexqi" filed a design patent application, reinforcing Plaintiff's belief that these storefronts are owned, controlled, or operated by Defendant, rather than actual third parties. *See* Ex. D. In further later

[Munnrei] were legally procured from ***Shenzhen Lexgi Electronic Technology***."); *id.* ("Our smart wristbands (SGJIK logo) were legally procured from ***Shenzhen Lexgi Electronic Technology Co., Ltd.***")[3]. The Infringing Wearables offered for sale by the Responding Fronts are among those depicted above and all appear to be identical.

55.    In addition to identifying Defendant as the manufacturer of the Infringing Wearables in response to cease and desist letters from WHOOP, most of the Responding Fronts claimed to have been authorized by Defendant to sell the Infringing Wearables in the United States. *See, e.g.*, Ex. D ("Timexpose operates under a valid and binding Licensing Agreement with Shenzhen Lexqi. This agreement explicitly grants Timexpose the right to manufacture, market, distribute, and sell products bearing this design under the Timexpose brand in the United States market"); *id.* ("The H59 smart bands we sell are sourced under a valid license from Shenzhen Lexqi[.]"); *id.* ("Our products are purchased from Shenzhen Lexqi Electronic Technology Co., Ltd. … and we hold official authorization from them."); *id.* ("We operate under formal authorization from Shenzhen Lexgi."); *id.* ("We operate under formal authorization from Shenzhen Lexgi."). In fact, two of the Responding Fronts attached identical "Authorization letter[s]," purportedly signed by Defendant and authorizing sale of the Infringing Wearables "Worldwide," including in the United States. *Id.*

---

correspondence, the same representative referred to this storefront as the "licensee" of Shenzhen Lexqi and referred to "Lexqi Inc." (Shenzhen Lexqi) as its "affiliated entity."

[3] Notably, the responsive correspondence from SGJIK was **identical** to the responsive correspondence from Harry Williams, except that the names of the senders purport to be different and references to the company were changed to reflect "SGJIK" and "Harry Williams," respectively. *See* Ex. D. Indeed, both emails retained the same error of failing to fill in the placeholder "[date]" to reflect the date of the demand letter sent on behalf of WHOOP (i.e., "We are in receipt of your legal notice dated [date] regarding alleged infringement…"), further reinforcing Plaintiff's belief that these "storefronts" are owned, controlled, or operated by Defendant and are not actual third parties.

56.    The Responding Fronts also invoked Defendant's United States design patent application (U.S. Patent Application No. 29/957,863) to justify their sales of the Infringing Wearables, suggesting that Shenzhen Lexqi is entitled to patent protection (on a design that has been in use since at least 2015 by WHOOP). *See, e.g.*, Ex. D.

57.    Plaintiff selected four of the Responding Fronts and was able to place an order for an Infringing Wearable from a Massachusetts address. All four of the Infringing Wearables were shipped by the Responding Fronts to the Massachusetts address between August 30 and September 1, 2025. Upon inspection, all four appear to be identical, with three of the four even having identical packaging:



58.    Upon information and belief, Defendant supplies the Infringing Wearables to all of the storefronts offering the Infringing Wearables, as identified above, not only those that responded to identify expressly Shenzhen Lexqi as the manufacturer of the Infringing Wearables and as the entity authorizing sale of the Infringing Wearables in the United States.

**Defendant Refuses to Cease Unlawful Infringement in Response to
Cease and Desist Letter Sent Directly to It**

59.     On August 7, 2025, after learning from the Responding Fronts that Shenzhen Lexqi manufactures the Infringing Wearables and authorizes sales of the Infringing Wearables in the United States, WHOOP sent Defendant a letter, requiring, *inter alia*, that Defendant immediately cease all sale and manufacture of the Infringing Wearables and any other products featuring designs or trade dress that is identical or confusingly similar to the WHOOP Trade Dress. Ex. J.

60.     WHOOP received a response on behalf of Shenzhen Lexqi on August 19, 2025, from a California-based attorney who identified herself as Defendant's legal counsel in connection with intellectual property claims. In that response, Defendant's counsel requested a teleconference to discuss the letter sent on behalf of WHOOP on August 7, 2025, which counsel for the parties scheduled to occur on August 24, 2025. Ex. J. However, before the planned meeting, on August 22, 2025, Defendant's counsel canceled the meeting and sent a letter asserting, without analysis, that "Lexqi's products have not infringed upon your client's legitimate rights and interests" and requesting that Plaintiff "reconsider [its] accusations" against Defendant. *Id*.

61.     Upon information and belief, having intentionally copied the WHOOP Trade Dress in designing the Infringing Wearables in order to gain an unfair commercial advantage by mimicking WHOOP and trading on the goodwill of the iconic WHOOP trade dress, Defendant is well-aware that it is infringing on WHOOP intellectual property. Additionally, Shenzhen Lexqi has certainly been on actual notice that it infringes the WHOOP Trade Dress since WHOOP sent demand letters to the Amazon storefronts on July 18, 2025, which was reinforced on August 7, 2025, when WHOOP sent a letter directly to Shenzhen Lexqi regarding its infringement of the WHOOP Trade Dress. Thus, since at least July 18, 2025, Defendant's infringement of the WHOOP Trade Dress has been willful and intentional.

62.     Shenzhen Lexqi continues to sell and offer for sale the Infringing Wearables in the United States, despite being put on notice of the trade dress rights owned by WHOOP, which constitutes willful trade dress infringement and unfair competition.

### Defendant Has Directly Targeted the United States by Obtaining FCC Equipment Authorization and by Filing a United States Patent Application

63.     Shenzhen Lexqi intended to market and sell the Infringing Wearables in the United States, as reflected in its public filings with the Federal Communications Commission ("FCC") seeking equipment authorization.

64.     As explained on the FCC's website, the Office of Engineering and Technology of the FCC administers the equipment authorization program, which is "one of the principal ways the Commission ensures that RF devices used in the United States operate effectively without causing harmful interference and otherwise comply with the Commission's rules." *See* Ex. C. "All RF devices subject to equipment authorization must comply with the Commission's technical requirements prior to importation or marketing." *Id.*

65.     As reflected in the public FCC records, Shenzhen Lexqi filed for and obtained equipment authorization for FCC ID 2BB8O-H59-1 - i.e., its infringing activity tracker. *See id*.

66.     Shenzhen Lexqi submitted a user manual in connection with its application for equipment authorization, which clearly illustrates Shenzhen Lexqi's use of the WHOOP Trade Dress. *id*.

| WHOOP Wearable Embodying the WHOOP Trade Dress | Shenzhen Lexqi's Activity Tracker (User Manual) |
|---|---|
|  | |

67.     Notably, in another application for equipment authorization filed by Shenzhen Lexqi with the FCC, Defendant seeks authorization to market and sell its "smart bracelet" (FCC 2BB8O-DS01), which is a faceless activity tracker that does not incorporate the WHOOP Trade Dress, as shown below.



68.     As part of its application for the equipment authorization for the infringing activity tracker (FCC ID 2BB8O-H59-1), Shenzhen Lexqi designated UA International Inc. as its United States agent for service of process for FCC ID 2BB8O-H59-1. Ex. C.

69.     In addition to its application for product authorization for the infringing wearable device, Shenzhen Lexqi has sought product authorization from the FCC for nine additional devices, demonstrating its continued and consistent efforts to market and sell products in the United States.

70.    Shenzhen Lexqi filed a United States design patent application that purports to embody the design features reflected in the Infringing Wearables. The patent application was filed on August 16, 2024, many years after WHOOP began using the WHOOP Trade Dress in 2015.

71.    Defendant also purports to have "authorized" the sale of the Infringing Wearables in the United States.  For example, in response to cease and desist letters sent by WHOOP, multiple online storefronts selling Defendant's Infringing Wearables attached identical "Authorization letter[s]," purportedly signed by Defendant and authorizing sale of the Infringing Wearables "Worldwide," including in the United States.  Ex. D.

### **Actual Confusion from Defendant's Willful and Ongoing Trade Dress Infringement**

72.    Upon information and belief, Shenzhen Lexqi knowingly adopted the WHOOP Trade Dress on its Infringing Wearables, which it sells in the United States at least through several Amazon storefronts, with the express intention of confusing consumers and misappropriating the goodwill and business reputation built by WHOOP.

73.    Defendant's infringement of the WHOOP Trade Dress has already caused consumer confusion.  For example, on August 25, 2025, a customer identified as "Kayla" wrote an online review for Defendant's Infringing Wearable entitled "**WHOOP** band." *See* Ex. K (emphasis added).  Additionally, one online seller of Defendant's Infringing Wearables, Hadrono, confused Defendant's Infringing Wearables for authentic WHOOP Wearables embodying the WHOOP Trade dress.  In an August 20th response to a cease-and desist-letter from WHOOP, Hadrono explained that its listing of the Infringing Wearable was an "oversight" that should not have occurred without ***WHOOP Inc.'s*** approval.  Ex. D [Hadrono Response].  Hadrono further noted that "[a]ll products ***from your brand*** have been removed from our inventory to ensure full compliance with your directives."  *Id.* [Hadrono Response] (emphasis added).

74.     Shenzhen Lexqi continues to infringe the WHOOP Trade Dress, despite being put on notice of the trade dress rights owned by WHOOP, including its rights based on substantially exclusive, continuous use of the WHOOP Trade Dress in the United States since as early as 2015.

75.     Shenzhen Lexqi's continued unauthorized use of the WHOOP Trade Dress in connection with highly similar, yet inferior, products to those offered by WHOOP in connection with the iconic WHOOP Trade Dress will continue to cause consumer confusion and irreparable harm to WHOOP and its goodwill and reputation in the marketplace.

<u>**COUNT I**</u>
**FEDERAL TRADE DRESS INFRINGEMENT**
*Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)*

76.     WHOOP incorporates by reference the allegations set forth above as though fully set out herein.

77.     The WHOOP Trade Dress is non-functional and distinctive based on, among other things, extensive nationwide use, promotion, marketplace success, and recognition, and were so before Shenzhen Lexqi first sold, offered for sale, distributed, advertised, or promoted the Infringing Wearables.

78.     Shenzhen Lexqi's use of the WHOOP Trade Dress is without permission or authorization from WHOOP and in willful disregard of the rights of WHOOP to control its intellectual property.

79.     Shenzhen Lexqi's unauthorized use of the WHOOP Trade Dress in commerce, as described above, has caused and is likely to cause confusion, mistake, or deception, and is likely to cause and has caused consumers to believe incorrectly that the Infringing Wearables are produced, sponsored, authorized, or licensed by or are otherwise connected to or affiliated with WHOOP.

80.    Shenzhen Lexqi's unauthorized use of the WHOOP Trade Dress has harmed and will result in future harm to the reputation of WHOOP and its goodwill in its WHOOP Trade Dress in the marketplace.

81.    Shenzhen Lexqi's acts are willful, wanton, reckless, and intended to confuse the public and to injure WHOOP.

82.    As a direct and proximate result of the foregoing acts, WHOOP has suffered and will continue to suffer significant injuries in an amount to be determined at trial.

83.    WHOOP is entitled to recover all damages, including attorneys' fees, that it has sustained and will sustain, and all gains, profits, and advantages obtained by Shenzhen Lexqi as a result of its infringing acts.

84.    There is no adequate remedy at law that can fully compensate WHOOP for the harm caused by Shenzhen Lexqi's infringement, which is ongoing. Accordingly, WHOOP is entitled to injunctive relief prohibiting Shenzhen Lexqi from continuing to infringe the WHOOP Trade Dress or any designs confusingly similar thereto.

## COUNT II
### FEDERAL UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN
*Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)*

85.    WHOOP incorporates by reference the allegations set forth above as though fully set out herein.

86.    Shenzhen Lexqi's use of the WHOOP Trade Dress without consent or authorization from WHOOP constitutes false designation of origin, which has caused and is likely to cause confusion or to cause mistake, or to deceive as to the affiliation, connection, or association of Shenzhen Lexqi with WHOOP, or as to the origin, sponsorship, or approval of Shenzhen Lexqi's goods or commercial activities by WHOOP, in violation of 15 U.S.C. § 1125(a).

87.     Shenzhen Lexqi acted unfairly and deceptively against WHOOP by infringing intellectual property rights of WHOOP, including its WHOOP Trade Dress, with the Infringing Wearables and using the Infringing Wearables to compete improperly with WHOOP.

88.     Such conduct by Shenzhen Lexqi is likely to confuse, mislead, and deceive Shenzhen Lexqi's customers, purchasers, and members of the public as to the origin of Defendant's product and/or the origin of the WHOOP Trade Dress and cause said persons to believe mistakenly that Defendant and/or its products have been sponsored, approved, authorized, or licensed by WHOOP or are in some way affiliated or connected with WHOOP, all in violation of 15 U.S.C. § 1125, and constitutes false designation of origin and unfair competition with WHOOP.

89.     Defendant's actions were undertaken willfully with full knowledge of the falsity of such designation or origin and unfair competition.

90.     WHOOP is informed and believes, and thereon, alleges that Defendant has derived and received, and will continue to derive and receive, gains, profits, and advantages from Defendant's false designation of origin and unfair competition in an amount that is not presently known to WHOOP. By reason of Defendant's actions constituting false designation of origin, false or misleading statements, false or misleading descriptions of fact, false or misleading representations of fact, and unfair competition, WHOOP has been damaged and is entitled to monetary relief in an amount to be determined at trial.

91.     Due to Shenzhen Lexqi's actions, WHOOP has suffered and continues to suffer great and irreparable injury for which WHOOP has no adequate remedy at law, and WHOOP is entitled to injunctive relief.

<u>**COUNT III**</u>
**MASSACHUSETTS UNFAIR AND DECEPTIVE TRADE PRACTICES**
*Mass. Gen. L. ch. 93A §§ 2, 11*

92.     WHOOP incorporates by reference the allegations set forth above as though fully set out herein.

93.     Shenzhen Lexqi's appropriation, adoption, and use of the WHOOP Trade Dress on the Infringing Wearables has and is likely to continue to confuse or mislead consumers into believing that Shenzhen Lexqi's goods are authorized, licensed, affiliated, sponsored, and/or approved by WHOOP.

94.     The actions of Shenzhen Lexqi, as described above, constitute unfair and deceptive business practices within the meaning of Mass. Gen. Laws ch. 93A.

95.     At all times relevant to this action, Shenzhen Lexqi has been engaged in trade or commerce within the meaning of Mass. Gen. Laws ch. 93A.

96.     Shenzhen Lexqi acted unfairly and deceptively by infringing intellectual property rights of WHOOP, including the WHOOP Trade Dress, and using the Infringing Wearable to compete improperly with WHOOP through various online storefronts.

97.     The deceptive, unfair and fraudulent practices set forth herein have been undertaken with knowledge by Shenzhen Lexqi willfully with the intention of causing harm to WHOOP and for the calculated purpose of misappropriating the goodwill and business reputation of WHOOP.

98.     Shenzhen Lexqi's unfair and deceptive acts took place primarily and substantially in Massachusetts. WHOOP is headquartered in Massachusetts and has confirmed purchases of the Infringing Wearables to consumers in Massachusetts.

99.     Shenzhen Lexqi's acts have caused and will continue to cause irreparable injury to WHOOP, including harm to the business, reputation, and goodwill of WHOOP. WHOOP has no

adequate remedy at law to compensate it fully for the damages that have been caused, and which will continue to be caused, by Defendant's unlawful acts, unless it is enjoined by this Court.

100.    In addition, as a result of Shenzhen Lexqi's unfair and deceptive acts, WHOOP has suffered and will continue to suffer monetary damages.

101.    As a result of Shenzhen Lexqi's conduct in violation of Chapter 93A, as described herein, WHOOP is entitled to recover actual damages in an amount to be proven at trial, such amount to be doubled or trebled, injunctive relief, and attorneys' fees and costs pursuant to Mass. Gen. Laws ch. 93A.

**COUNT IV**
**UNFAIR COMPETITION**
*Massachusetts common law*

102.    WHOOP incorporates by reference the allegations set forth above as though fully set out herein.

103.     Shenzhen Lexqi acted unfairly and deceptively by infringing intellectual property rights of WHOOP, including the WHOOP Trade Dress and using the Infringing Wearables to compete improperly with WHOOP.

104.    Shenzhen Lexqi's unfair and deceptive acts took place primarily and substantially in Massachusetts.

105.    By violating intellectual property rights of WHOOP, Shenzhen Lexqi has engaged in unfair competition.

106.    WHOOP has suffered irreparable harm and, absent immediate injunctive relief, will continue to suffer irreparable harm as a result of Shenzhen Lexqi's actions. Such harm includes, but is not limited to, the loss of the right of WHOOP to compete fairly in the marketplace and the

diversion of sales from WHOOP to Shenzhen Lexqi and a lessening of the goodwill associated with WHOOP, which would not have occurred but for Shenzhen Lexqi's unfair competition.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests entry of judgement against Shenzhen Lexqi on each and every claim as set forth above and an award of relief, including the following:

A. An Order in favor of WHOOP and against Shenzhen Lexqi on the claim of trade dress infringement under 15 U.S.C. § 1125(a) that Defendant has infringed the WHOOP Trade Dress.

B. An Order in favor of WHOOP and against Shenzhen Lexqi on the claim of false designation of origin and unfair competition under 15 U.S.C. § 1125.

C. An Order in favor of WHOOP and against Shenzhen Lexqi on the claim of unfair competition under Chapter 93A.

D. An Order in favor of WHOOP and against Shenzhen Lexqi on the claim of common law unfair competition.

E. An Order that Shenzhen Lexqi and its officers, directors, agents, servants, affiliates, employees, subsidiaries, parents, licensees, assigns, and customers, and all others acting in concert or participation with them, be temporarily, preliminarily, and permanently enjoined and restrained from further acts of infringement of the WHOOP Trade Dress, including:

    1. using the WHOOP Trade Dress or any design features that are confusingly similar thereto;

    2. offering, promoting, or selling the Infringing Wearables and/or any product that uses the WHOOP Trade Dress and/or anything confusingly similar thereto;

3.  representing by any means whatsoever, directly or indirectly, that Shenzhen Lexqi or any of its products or activities are associated, connected, or affiliated with WHOOP, and/or sponsored, authorized, or licensed by WHOOP;

4.  effecting assignments or transfers, forming new entities or associations or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth above;

5.  falsely designating the origin of Shenzhen Lexqi's goods;

6.  unfairly competing with WHOOP in any manner whatsoever;

7.  causing a likelihood of confusion or injuries to the business reputation of WHOOP; and

8.  aiding, abetting, contributing to, or otherwise assisting anyone in engaging or performing any of the activities referred to in subparagraphs E(1)-(7).

F.  An Order directing Shenzhen Lexqi to, within 30 days after the entry of the permanent injunction, file with this Court and serve on the attorneys for WHOOP a report in writing and under oath setting forth in detail the manner and form in which Shenzhen Lexqi has complied with the injunction.

G.  An Order directing Shenzhen Lexqi to immediately tender to WHOOP all products, advertisements, promotional materials, and/or any other materials and things that contain or bear the WHOOP Trade Dress, and/or anything confusingly similar thereto.

H.  An Order directing Shenzhen Lexqi to account for Defendant's profits resulting from its trade dress infringement, false designation of origin, and unfair competition.

I. An Order awarding WHOOP monetary relief in an amount to be fixed by the Court in its discretion as it finds just as an equitable remedy and as a remedy under 15 U.S.C. § 1117, including:

   1. All profits received by Defendant from sales and revenues of any kind made as a result of its infringing actions, said amount to be trebled;

   2. All damages sustained by WHOOP as a result of Defendant's acts of trade dress infringement, false designation of origin, and unfair competition; and

   3. The costs of this action.

J. An Order adjudging that this is an exceptional case.

K. An Order awarding WHOOP its attorneys' fees, expenses, and costs incurred by WHOOP in connection with this action pursuant to 15 U.S.C. § 1117.

L. An Order for trebling of damages and/or exemplary damages because of Defendant's willful conduct pursuant to 15 U.S.C. § 1117.

M. An Order awarding pre-judgment and post-judgment interest and costs of this action against Defendant.

N. Such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all issues so triable.

Dated: September 22, 2025

Respectfully submitted,

*/s/ Joshua M. Dalton*
Joshua M. Dalton (BBO # 636402)
Katherine W. Soule (BBO # 703965)
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110-1726
Tel.: (617)-341-7700
Facsimile: (617)-341-7701
josh.dalton@morganlewis.com
katherine.soule@morganlewis.com

John Hendershott (*pro hac vice* forthcoming)
MORGAN, LEWIS & BOCKIUS LLP
101 Park Avenue
New York, New York 10178
Phone: (212) 309-6000
Facsimile: (212) 309-6001
jack.hendershott@morganlewis.com

*Counsel for Plaintiff WHOOP, Inc.*