UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| WHOOP, INC., </br></br>  Plaintiff, </br></br> v. </br></br> SHENZHEN LEXQI ELECTRONIC TECHNOLOGY CO., LTD., </br></br>  Defendant. | Civil Action No. </br> 25-12690-FDS |

**MEMORANDUM AND ORDER ON PLAINTIFF'S
MOTION TO ACCEPT ALTERNATIVE SERVICE**

SAYLOR, J.

This is a trade-dress infringement case. Plaintiff Whoop, Inc., a United States corporation, alleges that defendant Shenzhen Lexqi Electronic Technology Co., Ltd., a Chinese corporation, manufactures and sells a health-monitoring device that infringes on its intellectual-property rights. It seeks monetary and injunctive relief under federal law and Mass. Gen. Laws ch. 93A.

The issue presently before the Court involves the recurring problem of service of process on a foreign entity. The United States and China are signatories to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents. *See Status Table*, HCCH (Mar. 21, 2024), https://perma.cc/VZ54-RVY5. That treaty, which was executed in 1965, provides a mechanism for service of process from a United States court on a Chinese defendant. Rather than invoke that mechanism, plaintiff has moved for an order providing that service of process can be accomplished by physical delivery of the summons, complaint, motion for preliminary injunction, and supporting documents on a U.S.-based attorney who represented defendant in

prior discussions concerning this claim.  Plaintiff is seeking an order under Fed. R. Civ. P. 4(f)(3) approving such alternative service.

The Court is sympathetic to plaintiff's position, which is far from unique.  Service of process on a foreign defendant is normally cumbersome, expensive, and slow—if it can be effected at all.  The Hague Convention requires that process be served through a Central Authority (here, the Ministry of Justice of the People's Republic of China).  *See China – Central Authority & Practical Information*, HCCH, https://perma.cc/C2HR-EQG5.  The administrative requirements of doing so are often exceptionally burdensome, adding to delays and expense.  *See* Eric Porterfield, *Too Much Process, Not Enough Service: International Service of Process Under the Hague Service Convention*, 86 TEMP. L. REV. 331, 344-47 (2014).  But compliance with those requirements is only the beginning.

> Commentators often characterize the difficulties associated with complying with the Hague Service Convention as minimal.  If the only impediments to service were the expense and administrative headaches . . . , those commentators would be justified.  Although these difficulties are not insignificant, the more serious obstacles to international service of process are the serious delays in and the lack of reliability of the Central Authority.  This problem arises, at least in part, because there is neither stick nor carrot available to litigants to enforce a State's treaty obligations. There is no deadline imposed on the Central Authority to act on service requests.  Indeed, a signatory country can categorically ignore the Hague Service Convention. Even where the Central Authority acknowledges its responsibilities, requests for service are often not acted upon for months.  Worse still, proof of service from the Central Authority may take years, or never come at all.

*Id.* at 345 (footnotes omitted).

That procedure thus appears to be substantially flawed at best.  And it is particularly problematic where, as here, a plaintiff seeks preliminary relief.  Nonetheless, the Hague Convention, as a treaty, is the "supreme Law of the Land."  U.S. Const. art. VI.  At the same time, however, Fed. R. Civ. P. 4(f)(3), which permits alternative means of service of process in

the discretion of the Court, is also the law of the land.  In order to assess the merits of plaintiff's motion, therefore, the Court must undertake an analysis of the "complex interplay among the Hague Service Convention, the Federal Rules of Civil Procedure, and [Massachusetts] law." William S. Dodge, *Serving Foreign Defendants' U.S. Counsel to Avoid the Hague Service Convention*, TRANSNAT'L LITIG. BLOG (Apr. 10, 2025), https://perma.cc/TY25-SF3V.

For the reasons that follow, the motion to permit alternative service will be denied without prejudice to its renewal, pending a showing that plaintiff has at least made reasonable efforts to attempt to use the process set forth in the Hague Convention before alternative service will be permitted.

**I.     Background**

    **A.     Factual Background**

Whoop, Inc., is a U.S.-based technology company that produces the "WHOOP Wearable," a device that "allows consumers to track daily behaviors and metrics like sleep, strain, recovery, and more, to help users optimize their physical and mental performance." (Compl. ¶¶ 5, 22-24).  Whoop released the first commercial version of the WHOOP Wearable in 2015.  (*Id.* ¶ 25).  Although the device has since gone through several iterations, all versions have included the same "non-functional and distinctive trade dress," consisting of "a continuous fabric band that wraps over the device (i.e., a faceless device) with thin metal accents on the sides of the device." (*Id.* ¶ 26).  According to the complaint, "[a]s a result of long and substantial use, sales, advertising, and third-party recognition," the design of the WHOOP Wearable has become strongly associated with Whoop, Inc.  (*Id.* ¶¶ 32-46).

Shenzhen Lexqi Electronic Technology Co., Ltd., is a manufacturer of smart watches and health monitoring wearable devices with its offices in Shenzhen, China.  (Compl. ¶¶ 6, 47).

In July 2025, Whoop became aware of several listings on Amazon.com selling what appeared to be knockoff versions of the WHOOP Wearable. (Compl. ¶ 48). When Whoop sent letters to the entities listing these products, they responded that they had purchased the devices from Shenzhen Lexqi, and that they had been authorized by Shenzhen Lexqi to sell the devices in the United States. (Compl. ¶¶ 54-55).

On August 7, 2025, Whoop sent a letter to Shenzhen Lexqi demanding that it cease and desist the sale and manufacture of its knockoff devices, which Whoop alleged infringed on its trade-dress rights. (Compl. ¶ 59). On August 19, 2025, it received a reply from Mandana Jafarinejad, a California-based attorney, who stated that she "represent[s] Shenzhen Lexqi . . . in regards to intellectual property claims." (Compl. ¶ 60; *id.*, Ex. J at 3). On August 21, 2025, attorney Jafarinejad sent a letter on Shenzhen Lexqi's behalf denying that its products infringed on any of Whoop's intellectual-property rights. (*Id.*, Ex. J at 4).

B.  **Procedural Background**

Whoop filed this action on September 22, 2025. At the same time, it moved for a preliminary injunction restraining Shenzhen Lexqi and its affiliates from offering, promoting, or selling the allegedly infringing products. (Dkt. No. 9 at 1-2).

Whoop then made three attempts to serve process on Shenzhen Lexqi in the United States. As a seller seeking to market radio frequency devices in the United States, Shenzhen Lexqi was required to obtain "equipment authorization" from the FCC. As part of those applications, it was required to provide a U.S.-based agent for service of process. *See* 47 C.F.R. § 2.911(d)(7). Across several applications, both for the device at issue in this case and for others, it listed three different U.S. companies as its agent for service of process: UA International, Inc., based in Colorado Springs, Colorado; KIIGOO.Hot, Inc., based in City of Industry, California; and Glocerts Technology, Inc., based in Riverside, California. (Dkt. No. 17

4

at 2-5). Between September 22 and 25, 2025, Whoop attempted to serve Shenzhen Lexqi through all three agents but was unable to do so. (*Id.*).

As for UA International, a process server attempted to effect service at its registered address but found that it "had no visible offices or presence at that address." (*Id.* at 3). A telephone number that UA International had listed as part of Shenzhen Lexqi's FCC application was apparently out of service. (*Id.* at 4). Whoop was able to contact by e-mail an individual purporting to be a representative of UA International, but they "refused to provide a valid street address" and now apparently deny that UA International is the U.S. agent for service on Shenzhen Lexqi. (*Id.*).

Whoop faced similar difficulties attempting to effect service on the other two agents. A process server attempted service on the registered address of KIIGOO.HOT on three separate occasions, but found its office doors locked during the middle of the workday on all occasions. (*Id.* at 5). Whoop also hired a process server to attempt service on Glocerts Technology at its registered address on three separate occasions, but no one answered the door when the process server approached. (*Id.*).

Whoop then filed the present motion on September 26, 2025. (Dkt. No. 16). It represents that a courier had hand-delivered a copy of the summons, complaint, preliminary-injunction motion, and supporting documents to an employee of the law firm of attorney Jafarinejad on September 25, 2025, and that it sent a copy of the documents to attorney Jafarinejad by email on September 26, 2025. (Dkt. No. 17 at 6).

## II.     **Legal Standard**

Rule 4 of the Federal Rules of Civil Procedure sets forth the acceptable methods for service of process. "Unless federal law provides otherwise," a corporation that is to be served "at a place not within any judicial district of the United States" must be served "in any manner

5

prescribed by Rule 4(f) for serving an individual, except personal delivery under (f)(2)(C)(i)." Fed. R. Civ. P. 4(h)(2).

Rule 4(f), in turn provides that unless federal law requires otherwise, "an individual . . . may be served at a place not within any judicial district of the United States":

> (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents;
>
> (2) if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice . . . ; or
>
> (3) by other means not prohibited by international agreement, as the court orders.

Fed. R. Civ. P. 4(f).

When a corporation is to be served "in a judicial district of the United States," it must be served either (1) "in the manner prescribed by Rule 4(e)(1) for serving an individual"—that is, "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made"—or (2) "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1).

### III. Analysis

Plaintiff requests that the court allow alternative service on attorney Jafarinejad by physical delivery and e-mail because it "will suffer irreparable harm from . . . defendant's continuing action and greater urgency is required than service through the Hague Convention can supply." (Dkt. No. 17 at 9).

6

Plaintiff's request for alternative service raises at least two distinct issues: (1) whether a plaintiff must attempt service under Rule 4(f)(1) (that is, under the Hague Convention) before a court may authorize alternative service under Rule 4(f)(3), and (2) assuming alternative service is appropriate, whether a court may order such service on a party's U.S.-based counsel.

### A.  Requirement to Attempt Service Under Rule 4(f)(1)

The first question is whether a plaintiff is required to attempt service under the Hague Convention before the court may authorize alternative service under Rule 4(f)(3).

As noted, the United States and China are both parties to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents, or Hague Service Convention. *See Status Table*, HCCH (Mar. 21, 2024), https://perma.cc/VZ54-RVY5. "Article 2 of the Hague Convention requires all judicial documents in civil matters to be served through a Central Authority." *Anova Applied Elecs. v. Hong King Group, Ltd.*, 334 F.R.D. 465, 469 (D. Mass. 2020); *see* Hague Convention on Service Abroad of Judicial and Extrajudicial Documents art. 2, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163. Plaintiff has not yet attempted to serve defendant through China's Central Authority, which is its Ministry of Justice. *See China – Central Authority & Practical Information*, HCCH, https://perma.cc/C2HR-EQG5.[1]

There is no consensus as to whether a plaintiff must attempt service under Rule 4(f)(1) before a court may order alternative service under Rule 4(f)(3). The First Circuit has stated that "[b]y its plain terms, Rule 4(f)(3) does not require exhaustion of all possible methods of service before a court may authorize service by 'other means,' such as service through counsel."

---

[1] Rule 4(f)(3) provides that any court-ordered alternative methods of service must "not [be] prohibited by international agreement." Fed. R. Civ. P. 4(f)(3). The Hague Convention prohibits service of process in China except according to its terms, but does not prohibit service on a Chinese corporation in the United States. *See Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017) (noting that "the Hague Service Convention . . . pre-empts inconsistent methods of service wherever it applies" (citation modified)).

7

*AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 420, 429 (1st Cir. 2015). This Court has nonetheless noted on several previous occasions that a plaintiff should be required to at least attempt service under Rule 4(f)(1) before it would authorize alternate service under Rule 4(f)(3). *See Anova Applied Elecs.*, 334 F.R.D. at 469; *Sionyx, LLC v. Hamamatsu Photonics K.K.*, 2016 WL 4007558, at *8 (D. Mass. July 26, 2016). Other courts, however, have declined to require such an attempt before authorizing alternative service. *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002) ("[S]ervice of process under Rule 4(f)(3) is neither a 'last resort' nor 'extraordinary relief.'" (quoting *Forum Fin. Grp., LLC v. President & Fellows of Harvard Coll.*, 199 F.R.D. 22, 23 (D. Me. 2001))); *cf. Sec. & Exch. Comm'n v. Elliott*, 2020 WL 7185854, at *2 (D. Mass. Dec. 7, 2020) (holding that service by e-mail authorized under Rule 4(f)(3) was not improper, even where plaintiff had made no effort to serve defendant by Hague Convention processes).

In any event, it appears that "whether to order [alternative] service of process under Rule 4(f)(3) is committed to the sound discretion of the district court." *United States v. Lebanese Canadien Bank SAL*, 285 F.R.D. 262, 266 (S.D.N.Y. 2012) (quoting *Madu, Edozie, & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 115 (S.D.N.Y. 2010)). In determining how to exercise that discretion, some courts have held that a plaintiff "must make some showing of the need for judicial intervention. The showing that must be made has frequently been described as follows: (1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary." *Vega v. Hastens Beds, Inc.*, 339 F.R.D. 210, 217 (S.D.N.Y. 2021) (quoting *Gang Chen v. China Green Agric.*, 2021 WL 103306, at *2 (S.D.N.Y. Jan. 6, 2021)). Requiring such a showing, they reason, discourages parties from "whimsically seeking an alternate means of

service." *S.E.C. v. China Ne. Petroleum Holdings Ltd.*, 27 F. Supp. 3d 379, 398 (S.D.N.Y. 2014) (quoting *In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012)).

The Court will adopt that approach to guide its exercise of discretion here. Again, as a treaty, the Hague Convention is the "supreme Law of the Land," U.S. Const. art. VI. It represents the result of decisions by the political branches of this country concerning how best to balance considerations of judicial economy with principles of fair notice and respect for national sovereignty. Under the circumstances, allowing plaintiffs to ignore the requirements of the Hague Convention entirely, based on the contention that following its procedures will be expensive, time-consuming, and possibly ineffective—a contention, to be sure, that the Court has no reason to doubt—seems problematic.

Under the circumstances, the Court interprets the overall scheme set out in Rule 4(f) and the Hague Convention to counsel in favor of requiring, at a minimum, a good-faith attempt to effect service through the channels established by the Convention before alternative methods of service will be authorized. That approach aligns with how many courts handle the issue. *See* BRYAN NEIHART & ANJALI NANDA, 1 LITIGATION OF INTERNATIONAL DISPUTES IN U.S. COURTS § 2:15 (2025) ("Although Rule 4(f)(3) is not an extraordinary option, most courts will not employ it as a matter of first resort."). And the advisory committee's notes on Rule 4(f) likewise indicate a preference for service under applicable treaties. Fed. R. Civ. P. 4 advisory committee's notes to 1993 amendments ("[W]hen service is to be effected outside a judicial district of the United States, the methods of service appropriate under an applicable treaty *shall be employed* if available and if the treaty so requires." (emphasis added)).

Plaintiff points to its attempts to serve defendant's agents listed on their FCC applications as good-faith efforts to serve defendant within the United States, but it is not clear whether

9

service on those agents would be effective even if successful.  The applicable FCC regulation appears to require companies to appoint an agent for service of process only in connection with matters before the FCC, not a general agent to accept all process on defendant's behalf.  *See* 47 C.F.R. § 2.911; Protecting Against National Security Threats to the Communications Supply Chain Through the Equipment Authorization Program, 88 Fed. Reg. 7592, 7598 (Feb. 6, 2023) ("Service of process [for purposes of this rule] includes, but is not limited to, delivery of any correspondence, notices, orders, decisions, and requirements of administrative, legal, or judicial process *related to Commission proceedings*." (emphasis added)).

In any event, the Court will direct that plaintiff must at least demonstrate that it made reasonable efforts to employ the procedures of the Hague Convention, and that such efforts have not been successful, before it will authorize alternative service under Rule 4(f)(3).  Mere inaction or unreasonable delay by the Central Authority may be sufficient to make the necessary showing, but the Court will evaluate the matter according to the totality of the circumstances at the appropriate time.

B.     **Permissiblity of Service on U.S.-based Counsel Under Rule 4(f)(3)**

Even if the Court were to authorize alternative service under Rule 4(f)(3), it is at least doubtful whether service on defendant's U.S.-based counsel under that rule is appropriate or sufficient.

As a threshold matter, it appears that Rule 4(f)(3), which permits alternative service "as the court orders," does not permit a court to deem previously attempted service valid where that service was not initially made pursuant to a court order.  *See De Gazelle Group, Inc. v. Tamaz Trading Establishment*, 817 F.3d 747, 750 (11th Cir. 2016) (finding service deemed sufficient after-the-fact by magistrate judge ineffective where plaintiff "failed to comply with Fed. R. Civ. P. 4(f)(3) by seeking prior court authorization for service" by alternative method); *United States*

*v. Machat*, 2009 WL 3029303, at *4 (S.D.N.Y. Sep. 21, 2009) ("Declaring prior service effective *nunc pro tunc* is not appropriate because Rule 4(f)(3) requires that the means of service be ordered by the Court . . . .").

But even to the extent plaintiff seeks permission to attempt to serve defendant's counsel again, it is unclear whether Rule 4 permits such service. As noted, Rule 4(h)(2) provides that a "foreign corporation" must be served "in any manner prescribed by Rule 4(f)" where such service occurs "at a place not within any judicial district of the United States." Fed. R. Civ. P. 4(h)(2). Where service is to occur "in a judicial district of the United States," by contrast, a foreign corporation must be served either "in the manner prescribed by Rule 4(e)(1)"—that is, "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is [to be] made" or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." *Id.* 4(h)(1). Rule 4(h)(1) does not include a provision giving the court broad discretion to fashion an alternative method of service—unlike Rule 4(h)(2), which does provide that discretion by cross-reference to Rule 4(f).

Courts are split on whether service on U.S.-based counsel for a foreign corporation is considered to occur within the United States, such that Rule 4(h)(1) applies, or outside the United States, such that Rules 4(h)(2) and 4(f) apply. *Compare, e.g.*, *Convergen Energy LLC v. Brooks*, 2020 WL 4038353, at *7 (S.D.N.Y. July 17, 2024); *Spin Master, Ltd. v. Aomore-US*, 2024 WL 3030405, at *8-9 (S.D.N.Y. June 17, 2024); *Freedom Watch, Inc. v. OPEC*, 107 F. Supp. 3d 134, 137-38 (D.D.C. 2015) (finding service occurs within the United States and applying Rule 4(h)(1)), *with Compania de Inversiones Mercantiles, S.A. v. Grupo Cementos de*

*Chihuahua S.A.B. de C.V.*, 970 F.3d 1269, 1295 (10th Cir. 2020); *Bazarian Int'l Financial Associates, L.L.C. v. Dessarrollos Aerohotelco, C.A.*, 168 F. Supp. 3d 1, 14-16 (D.D.C. 2016); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 27 F. Supp. 3d 1002, 1010 (N.D. Cal. 2014) (finding service occurs outside the United States and applying Rule 4(h)(2)).

The Court concludes that because Rules 4(f) and 4(h) focus on the location where service is to occur, rather than on the location of the party to be served, service on a party's U.S.-based counsel is service "in a judicial district of the United States." Again, Rule 4(h)(2) generally provides that a "foreign corporation . . . must be served . . . at a place not within any judicial district of the United States, in any manner prescribed by Rule 4(f)." Rule 4(f) describes how "an individual . . . may be served at a place not within any judicial district of the United States." Both rules, then, focus on the "place" where a defendant "must be served"—not on the "place" where the defendant is itself located. Some courts have found that service on U.S. counsel is nonetheless service "not within any judicial district of the United States" where counsel acts merely as a "conduit" for forwarding process to the defendant, such as by being instructed to forward an email. *See, e.g.*, *Compañia de Inversiones Mercantiles*, 970 F.3d at 1295. But the same logic would not seem to apply to plaintiff's desired method of service here, as plaintiff apparently asks that service be deemed complete as of the delivery of process to attorney Jafarinejad.

Furthermore, if service on defendant's counsel were properly considered service "not within any judicial district of the United States," then the Hague Convention would itself apply. By its terms, the Convention applies "in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad." Hague Service Convention art. 1, *supra*, 658 U.N.T.S. at 165. And the Supreme Court has recognized that the

Convention is "mandatory" in cases where it applies. *See Volkswagenwerk AG v. Schlunk*, 486 U.S. 694, 699 (1988). Therefore, to the extent plaintiff argues that service on defendant's U.S.-based counsel is service "not within any judicial district of the United States"—that is, "abroad"—the Convention applies. And where the Convention applies, it "pre-empts inconsistent methods of service." *Water Splash, Inc. v. Menon*, 581 U.S. 271, 273 (2017) (quoting *Schlunk*, 486 U.S. at 699); *see also Anova Applied Elecs.*, 334 F.R.D. at 472; William S. Dodge & Maggie Gardner, *E-Service Across Borders*, 108 JUDICATURE 44, 45 (2024) ("[T]he [Hague] convention is mandatory and exclusive when it applies, which means that the convention's silence [as to a method of service] is equivalent to a prohibition."). Moreover, Rule 4(f)(3) does not allow a court to order a method of alternative service that is "prohibited by international agreement."

Because the Convention does not list service on counsel as an appropriate method for service, service on counsel is implicitly prohibited where the Convention applies. As other courts have noted, a litigant cannot claim on the one hand that service on a party's U.S.-based counsel occurs outside the United States, such that Rule 4(f)(3) is applicable, but on the other that the Convention does not apply because the party is not served "abroad." *See Spin Master, Ltd.*, 2024 WL 3030405, at *9 ("Service cannot be outside of the United States for purposes of invoking Rule 4(f), but inside the United States for purposes of avoiding the requirements of the Hague Convention.").

For those reasons, service on defendant's U.S.-based counsel would appear to be service "in a judicial district of the United States," and would thus have to be accomplished following the provisions of Rule 4(h)(1) rather than the provisions of Rule 4(f). Therefore, service could properly be effected upon attorney Jafarinejad only if the laws of Massachusetts (where this

court sits) or California (where attorney Jafarinejad would presumably be served) permit service upon a corporation's counsel, or if attorney Jafarinejad is otherwise "authorized by appointment or by law to receive service of process" on defendant's behalf. Fed. R. Civ. P. 4(h)(1)(B). Assuming that forum law does not require the "transmi[ssion of] a judicial or extrajudicial document . . . abroad" for service to be complete, the Hague Convention would not be implicated in such circumstances. *See Schlunk*, 486 U.S. at 700. The Court takes no position at this stage as to whether the law of either state would permit such service.

### IV.   Conclusion

For the foregoing reasons, plaintiff's motion to accept alternative service is DENIED, without prejudice to its renewal upon a showing (1) that plaintiff has made reasonable efforts to serve defendant in compliance with the terms of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents and (2) that its efforts to do so have been unsuccessful. **So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Dated:  October 16, 2025         United States District Court Judge